UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JESSICA AYALA, individually and as Guardian for
Victor Rios, and WESTCHESTER RESIDENTIAL
OPPORTUNITIES, INC.,

                            Plaintiffs,

       -against-

SAW MILL LOFTS, LLC, and GINSBURG
DEVELOPMENT COMPANIES, LLC,

                           Defendants.
----------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 9779 (NSR) (JCM)

Plaintiffs Jessica Ayala, individually and as Guardian for Victor Rios, and Westchester Residential Opportunities, Inc. ("Plaintiffs") brought suit against Defendants Saw Mill Lofts, LLC, and Ginsburg Development Companies, LLC ("Defendants") alleging that Defendants failed to design and construct Plaintiffs' apartment building in accordance with federal and state accessibility requirements. (Docket No. 1). Before the Court is Plaintiffs' motion for reconsideration of the Court's May 12, 2023 ruling denying Plaintiffs' motion to compel, *inter alia*, production of leases and lease renewals of all residential apartments at the Saw Mill Lofts for a 7-year period. (Docket No. 75). In support of the motion, Plaintiffs filed a memorandum of law, (Docket No. 76) ("Pl. Mtn."), and a declaration from attorney James E. Bahamonde, (Docket No. 77), with various exhibits attached, (Docket Nos. 77-1-3). Defendants filed an opposition, (Docket No. 82) ("Def. Opp'n"), and a declaration from attorney Mark D. Ginsburg, (Docket No. 83), attaching exhibits, (Docket Nos. 83-1-4), and Plaintiffs replied, (Docket No. 84) ("Pl. Reply"). For the reasons set forth herein, Plaintiffs' motion for reconsideration is denied.

-1-

## I. BACKGROUND

### A. The 2016 Action and Consent Decree

The parties' dispute relates to a consent decree in the action *United States of America v. Ginsburg Development Companies, LLC*, 16-CV-7301 (NSR) ("2016 Action"). The Court briefly summarizes the circumstances of that matter to provide context for the instant discovery dispute. In the 2016 Action, Defendant Ginsburg Development Companies, LLC ("GDC") received a letter from the United States Attorney's Office for the Southern District of New York ("USAO") indicating that the USAO had investigated and found evidence of Fair Housing Act violations at two of GDC's rental properties. (Docket No. 57-1). The USAO stated that it "may initiate a lawsuit under the FHA against GDC to address this pattern or practice of FHA violations." (*Id*.). The USAO further stated that it also intended to seek injunctive relief to ensure GDC's compliance with the FHA as to the four additional, unfinished rental properties that GDC was in the process of designing and constructing, including the Saw Mill Lofts. (*Id*.). The USAO filed its suit against GDC in September 2016, which included a request for injunctive relief as to Saw Mill Lofts. (Docket No. 57 ¶ 8). On September 27, 2016, Judge Román so-ordered a Consent Order of Preliminary Injunction ("Consent Order") between the USAO and GDC. (Docket No. 51-3). Pursuant to that Consent Order, Defendants "agreed to retain an FHA compliance Reviewer" to review the design documents for, and to inspect, Saw Mill Lofts to ensure FHA compliance. (*Id*.).

### B. The Instant Action

Plaintiffs commenced this action on November 23, 2021. (Docket No. 1). As alleged in the Complaint, Defendant GDC is the developer and manager of Saw Mill Lofts, a multi-unit residential apartment complex in Hastings-on-Hudson, New York. (*Id*. ¶¶ 25-29). Plaintiff

Jessica Ayala is the mother of Plaintiff Victor Rios. (*Id*. ¶ 1). Mr. Rios is disabled and requires a wheelchair and respirator. (*Id*.). Plaintiff Westchester Residential Opportunities, Inc. ("WRO") is "a private, nonprofit fair housing organization." (*Id*. ¶ 16). Ayala and Rios moved into Saw Mill Lofts in February 2021 and, soon thereafter, discovered numerous alleged inaccessible areas in their apartment and in common areas. (*Id*. ¶¶ 38-50). WRO then sent "testers" to investigate their complaints, and encountered numerous alleged "barriers to access" at the apartment complex. (*Id*. ¶¶ 51-60). Consequently, Plaintiffs allege that the Saw Mill Lofts were constructed with numerous "architectural barriers" in violation of the Fair Housing Act, New York State Human Rights Law, and the Westchester County Fair Housing Law. (*See generally id*.).

**C. Plaintiffs' May 9, 2023 Letter Motion and the Court's Decision**

By letter filed on May 9, 2023, Plaintiffs requested leave to file a motion to compel "documents, communication, and leases which identify each rental unit that was occupied at the time the [2016 Action] Consent Injunction was issued…including the leases and lease renewals of tenants who have continuously occupied a rental unit at [Saw Mill Lofts] since being constructed, and documents and communication which identify each rental unit Dominic Marinelli was unable to inspect because it was occupied." (Docket No. 69 at 2-3). Plaintiffs argued that the requested materials were non-privileged and relevant to "Plaintiffs' claims of Defendants' failure to design and construct [Saw Mill Lofts] in compliance with relevant accessibility standards, …Defendants' failure to comply with the Consent Injunction…and to test the credibility of their Rule 30(b)(6) witness" because Defendants "claim they were unable to make the accessibility modifications pursuant to the Consent Injunction" because the rental units "were, and continue to remain occupied." (*Id*. at 3). Specifically, Plaintiffs cited to the testimony

of Defendants' Rule 30(b)(6) witness, Dan Mulvey, that accessibility modifications made since the commencement of this action were made to comply with the Consent Order, and could not have been done sooner because many rental units have been continuously occupied. (*Id*. at 2). Further, Plaintiffs cited to the April 19, 2023 deposition transcript of Saw Mill Loft's Construction Manager, Douglas Parker, that "the occupancy of the apartment buildings and rental units at [Saw Mill Lofts] cannot be made until Defendants receive a Temporary Certificate of Occupancy." (*Id*.). In the excerpted testimony attached to Plaintiffs' letter, Mr. Parker testified that the "final TCO" was received on December 31, 2016. (Docket No. 69-2 at 22-23).

Defendants opposed Plaintiffs' request by letter filed on May 11, 2023. (Docket No. 70). Defendants argued that the request, which contemplated documents for 66 apartment units over a 7-year period, was unduly burdensome and overbroad. (*Id*. at 3). Moreover, Defendants contended that the information sought was entirely irrelevant to this action because Plaintiffs had never seen the physical condition of the apartments, and thus, Plaintiffs' requested information would not lead to the discovery of admissible evidence regarding Plaintiffs' claims, *i.e.*, "whether any of the occupied apartments comply with the FHA." (*Id*.). Additionally, Defendants noted that this is not an enforcement action regarding the Consent Order, which is irrelevant to this action, as "Plaintiffs were not party to, and have no interest in, or rights or claims with respect to" the Consent Order. (*Id*.).

At the May 12, 2023 status conference, the Court heard oral argument and denied Plaintiffs' request. (*See* Docket No. 72) ("5/12/23 Tr."). During argument, the Court asked Mr. Bahamonde when the certificates of occupancy were issued for Saw Mill Lofts; Mr. Bahamonde replied that "the last one" was issued on December 31, 2016. (*Id*. at 21). In addition, the Court learned that Plaintiffs: (1) had not elicited any testimony from Mr. Mulvey regarding alleged

non-compliant features in any specific apartments, (*id.* at 26-27), and (2) Plaintiffs' WRO "testers" were not able to "identify the apartments they went into" during deposition, (*id*. at 26). Accordingly, the Court concluded that Plaintiffs could not discover "every lease" because every lease would not be relevant to Plaintiffs' claims regarding FHA non-compliance. (*Id*. at 27, 29). The Court explained that "those leases don't tell you anything other than whether they were occupied or not, they don't tell you whether they were compliant or not." (*Id*. at 27).  In contrast, the Court noted, "if your tester went in and found a problem in an apartment and the defense is going to be that apartment…was not vacant until X time, that is what you'd be entitled to." (*Id*.).

## II.  LEGAL STANDARD

"The decision to grant or deny [a motion for reconsideration under Local Civil Rule 6.3] is within the sound discretion of the . . . court." *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001).  In the Second Circuit, granting reconsideration "is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Peterson v. Home Depot U.S.A., Inc.*, No. 11 Civ. 5747 (ER), 2014 WL 1355622, at *1 (S.D.N.Y. Apr. 4, 2014) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).  The movant may not use the motion "to start a new round of arguments," nor "should the Court be expected to wade through lengthy papers that simply reiterate in slightly different form the arguments already made in the party's original papers." *Metro. Opera Ass'n, Inc. v. Local 100*, No. 00 Civ. 3613 (LAP), 2004 WL 1943099, at *2 (S.D.N.Y. Aug. 27, 2004).

To succeed on a motion for reconsideration, "the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Dellefave*, 2001 WL 286771, at *1; *see also Shrader v. CSX Transp. Inc.*, 70 F.3d 255,

257 (2d Cir. 1995). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to . . . matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257; *see also Park South Tenants Corp. v. 200 Cent. Park Assocs.*, 754 F. Supp. 352, 354 (S.D.N.Y. 1991) ("The standard . . . is strict in order to preclude repetitive arguments on issues that have already been considered fully by the Court."), *aff'd*, 941 F.2d 112 (2d Cir. 1991).

## III. DISCUSSION

Plaintiffs do not argue that the Court overlooked controlling authority in making its prior decision. In fact, Plaintiffs largely repeat their arguments from their prior letter as to why the discovery requested is "relevant and discoverable." (*Compare* Docket No. 69 *with* Docket No. 76). It is well-established that a motion for reconsideration is not a vehicle to raise new arguments, nor to "simply reiterate in slightly different form the arguments already made in the party's original papers." *Metro. Opera Ass'n, Inc.*, 2004 WL 1943099, at *2. Accordingly, the Court declines to reconsider since Plaintiffs simply repeat the same arguments, which do not alter the Court's previous conclusion. *See Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013) (Summary Order) (denying reconsideration where movant "simply rehashed his prior arguments"); *Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-CV-10082 (ER), 2013 WL 5878142, at *2 (S.D.N.Y. Oct. 31, 2013) (denying reconsideration where Court fully considered original arguments and did not overlook facts); *Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 271-72 (S.D.N.Y. 2001) (denying reconsideration where movant attempted to "relitigate arguments already considered and rejected" by the court).

Plaintiffs argue that "after the May 12, 2023 Court conference, Plaintiffs obtained copies of the Temporary Certificate of Occupancy related to each of the three multifamily buildings at

[Saw Mill Lofts], which demonstrate Defendants['] testimony that the apartments were occupied at the time the Consent Injunction was issued is not true." (Pl. Mtn. at 11). In a footnote, Plaintiffs state that "Plaintiffs exercise[d] due diligence attempting to obtain the [certificates] by requesting copies of all documents related to construction of [Saw Mill Lofts]" in a "subpoena served on the Building Department of the Village of Hastings-on-Hudson," and at the deposition of Mr. Parker. (*Id*. at 11 n.5). Defendants counter that Plaintiffs did not exercise due diligence in trying to obtain the Temporary Certificates of Occupancy previously and, in any event, this evidence is irrelevant to Plaintiffs' request for all leases and would not alter the Court's prior decision.[1] (*See* Def. Opp'n).

In order to constitute newly available evidence, the evidence must be "truly newly discovered or could not have been found by due diligence." *United States v. Potamkin Cadillac Corp.*, 697 F.2d. 491, 493 (2d Cir. 1983) (internal quotations and citation omitted); *see also Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015) (same). Newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration. *See Lima LS PLC*, 160 F. Supp. 3d at 578-79. (denying motion for reconsideration based on evidence adduced "in response to the court's rulings" when this evidence was available "prior to the Court's Order."); *Goldstein v. New York*, No. 00 Civ. 7463 (LTS), 2001 WL 893867, at *1 (S.D.N.Y. Aug. 7, 2001) (holding that a motion to reconsider is not an opportunity "to put forward additional arguments which the movant could have made, but neglected to make before judgment") (internal quotations and citation omitted). Thus, "only when evidence is truly newly discovered does it become proper grounds for a motion for

---

[1] Defendants also argue that Plaintiffs' motion should be dismissed as untimely. (Def. Opp'n at 3-4). Based on Plaintiffs' counsel's representations to the Court regarding the reason for the delayed filing, (Docket No. 77 ¶¶ 5-7), the Court will consider the motion.

reconsideration." *Atlantic States Legal Found., Inc. v. Karg Bros., Inc.*, 841 F. Supp. 51, 56 (N.D.N.Y. 1993).

Here, the Court does not find that the Temporary Certificates of Occupancy are "newly available" evidence. Plaintiffs concede that, at minimum, they have been aware of the certificates since Mr. Parker's deposition on April 19, 2023. (Pl. Mtn. at 4). Plaintiffs did request the certificates on the record at that deposition, (Docket No. 69-2 at 31),[2] however, there is no indication that Plaintiffs followed up regarding that request during the parties' "both written and verbal good-faith" meet and confers prior to Plaintiffs' motion, (Docket No. 69 at 1). Thus, "[t]his information would not constitute new evidence as the [plaintiffs] could have" obtained it "by due diligence" prior to the discovery hearing, and "were instructed to meet and confer regarding the document requests" prior to the hearing, pursuant to the Court's discovery order. *Lima LS PLC,* 160 F. Supp. 3d at 579. Nor do Plaintiffs dispute that the certificates were publicly available. Indeed, Plaintiffs declare that they went to the Village of Hastings-on-Hudson facilities to search for the certificates on May 31, 2023—nearly three weeks *after* the Court's decision. (Docket No. 77 ¶ 4). "A motion to reconsider is 'not supposed to treat the court's initial decision as the opening of a dialogue in which [the party making the motion] may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'" *Lima LS PLC*, 160 F. Supp. 3d at 578 (alteration in original) (quoting *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at 1 (S.D.N.Y. Jan. 18, 2000)). Accordingly, the Court finds that Plaintiffs could have obtained the certificates of occupancy with due diligence prior to filing their request to compel and the Court's decision on the issue.

---

[2] The Court is unable to see Defendants' response to this request because the excerpted pages provided to the Court do not include the full response.

Even assuming, *arguendo*, that the Temporary Certificates of Occupancy are "newly available," this evidence does not alter the Court's prior decision.  First, the Court was aware that at least one of the certificates was issued after the September 2016 Consent Order, because Mr. Bahamonde informed the Court that the "last one" was entered on December 31, 2016. (5/12/23 Tr. at 21).  Second, the Court also understood Plaintiffs' arguments (which remain unchanged) as to the relevance of the certificates to his request for all leases and renewals. (*See id*. at 20-29; *see also* Docket No. 69).  However, after considering Plaintiffs' letter, accompanying exhibits, and oral argument, the Court declined to find the discovery relevant because the information on the leases would fail to lead to admissible evidence that any apartments were not compliant with relevant laws, as alleged in Plaintiffs' complaint, because Plaintiffs did not know the condition of such apartments prior to such occupancy. (*See* 5/12/23 Tr. at 27, 29).  In other words, put plainly, Plaintiffs still have not presented any argument that they have a point of comparison such that the leases and lease renewals for 66 units over a 7-year period would lead to the discovery of information regarding FHA compliance in any unit over time.  Plaintiffs fail to present any evidence that would alter the Court's prior conclusion.  Accordingly, Plaintiffs' motion for reconsideration is denied. *See, e.g., Siino v. Bd. of Trustees of N.Y. City Teachers' Ret. Sys.*, No. 08 Civ. 4529 (PKC), 2009 WL 734076, at *1-2 (S.D.N.Y. Mar. 13, 2009) (denying motion for reconsideration where the plaintiff failed to identify any controlling law or facts overlooked by the court and instead "mainly recycle[d] arguments already rejected by the Court and put[] forward new arguments based on the same facts and claims").

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for reconsideration is denied. The Clerk of Court is respectfully requested to terminate the pending motion (Docket No. 75).

Dated:   August 16, 2023
        White Plains, New York

                                       **SO ORDERED:**

                                    _____
                                    JUDITH C. McCARTHY
                                    United States Magistrate Judge